IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK TODD,<br><br>                    Petitioner,<br><br>         vs.<br><br>JEFFREY BEARD, Secretary, California<br>Department of Corrections and<br>Rehabilitation,[1]<br><br>                    Respondent. | No. 2:12-cv-02920-JKS<br><br>MEMORANDUM DECISION |

Derek Todd, a former state prisoner proceeding *pro se*, filed a Petition for Habeas Corpus

with this Court pursuant to 28 U.S.C. § 2254.  Respondent has answered, and Todd has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

On August 3, 2010, Todd was charged by misdemeanor complaint with attempting to

dissuade two different witnesses (CAL. PENAL CODE § 136.1(a)(2)), battery (CAL. PENAL CODE

§ 242), and resisting, obstructing, or delaying a peace officer (CAL. PENAL CODE § 148(a)(1)).

The prosecution later made, then withdrew, a motion to amend the complaint to add the charge

of making criminal threats (CAL. PENAL CODE § 422).

On direct appeal of his conviction, the Appellate Division of the Solano County Superior

Court described the following facts underlying the misdemeanor complaint:

> On the morning of August 2, 2010, [Todd] appeared in the courthouse for a
> family law mediation regarding the custody of his sixteen year old son Zachery
> Todd-Archer. Zachery was waiting in the hallway in front of the mediation room during

---

[1]         Jeffrey Beard, Secretary, California Department of Corrections and
Rehabilitation, is substituted for the State of California.  FED. R. CIV. P. 25(c); Rule 2(a), Rules
Governing Section 2254 Cases in the United States District Courts; *Stanley v. Cal. Supreme
Court*, 21 F.3d 359, 360 (9th Cir. 1994).

the scheduled mediation, with his maternal grandmother Norma Archer and his tutor Lisa Rapalyea. Zachery did not believe he was going to participate in the mediation hearing itself, but his mother Crystal Williams was, as was his father, the Defendant and Appellant.  At some point while Crystal Williams was meeting with the mediator, [Todd] joined the others in the hallway.  An argument ensued between [Todd] and Rapalyea. [Todd] did not want Zachery talking with Rapalyea and [Todd] pushed Rapalyea twice. (Reporter's Transcript [hereinafter, "RT"] pp. 37-38; 63.)

Zachery called Deputy Brian Miller twice from a nearby homicide trial detail to watch the group in the hallway because of the disturbance between [Todd] and Lisa Rapalyea.  The first of these contacts ended when, after talking with [Todd], Norma Archer and Zachery Todd-Archer, the deputy concluded the parties had settled down and could be left to keep the peace and await their turns to participate in the mediation. Within about a minute Zachery, his grandmother and his tutor again summoned the deputy for help, and returned around the corner to the mediation area.  Upon arriving around the corner himself, Deputy Miller observed [Todd] ". . . standing in an aggressive stance leaning over the top of Zachery and his grandmother, who were seated in the chairs outside the mediation room"; [Todd] was "using hand gestures and an aggressive stance, yelling at them." (RT p. 100.)  After separating [Todd] a few feet from the others and stationing another deputy nearby to keep the peace, Deputy Miller inquired and learned from the mediator that [Todd] was no longer needed for the mediation session, but "Zachery and/or Zachery's mother, Crystal, may need to be further interviewed by the mediator."  (RT p. 103)  The deputy asked [Todd] to leave the mediation hallway area ". . . as a means to separate the parties, so there would be no further arguing."  (RT 103.) Deputy Miller explained his reasoning to [Todd] at the scene (and to the jury by describing this explanation): "Your aggressive demeanor is being disruptive here in the hallway . . . . this is the second time that I've had to address this with you" (RT p. 104), and "[i]t's clear you're intimidating these folks here in the hallway for their up and coming court appearance, . . ."  (RT p. 106).  [Todd's] demeanor was "[a]ngry[,] [m]ad and aggressive" (RT p. 102) and "progressively getting angrier [and] louder" (RT p. 104). When [Todd] repeatedly refused to leave the mediation area of the courthouse, and after warning him three times (RT p. 105) of the potential for arrest upon continued refusal to comply with this separation request, Deputy Miller arrested him for obstructing and delaying a peace officer.  (RT pp. 103-106.)  The incident report of the arrest was based on [Todd's] ". . . refusal to obey my [Miller's] request to leave the area." (RT p. 114.) The deputy's ". . . focus was on getting Mr. Derek Todd out of there, because of his belligerent nature."  (RT p. 115)  Much of the cross examination of the deputy centered upon whether or not [Todd] had resisted the actual arrest (he had not), and the duration of the exchange between [Todd] and the deputy (5-10 minutes from the first request to the arrest).  (RT pp. 116-118.)  There was neither cross-examination nor any other evidence presented by any party about the issue of the lawfulness of the deputy's acts in trying to physically separate [Todd] from the others for the reasons stated by the deputy.  The defense called just one witness, a District Attorney's Investigator, to prove that in a conversation with Zachery, the boy never mentioned [Todd's] having used his elbow to push Lisa Rapalyea, as the boy had stated in an earlier investigative conversation.  The

defense also presented a copy of the minutes of the trial described in the paragraph next below.

At trial the prosecution moved in limine for an order allowing witnesses Davion Barlowe [sic] and Rene Bojorquez to testify, pursuant to Evidence Code section 1101(b), about a prior altercation that took place at the courthouse between [Todd] and Barlow, on March 4, 2010.  These witnesses had testified in a prior case against Appellant (FCR276130).[1]  [Todd] objected, arguing that the witnesses were only offered to testify about a prior bad act to prove that he had a propensity to lose his temper.  (RT p. 12.)  The trial court allowed the witnesses to testify.  (*Id.* at 13 & 136.)

Also relevant to this appeal, [Todd's] trial counsel asked the trial court to give the CALCRIM 2670 jury instruction, regarding the use of excessive force.  (*Id.* at 145.)  [Todd] believed his arrest itself was excessive even though no accompanying force was used.  (*Id.* at 145 & 174.)  The trial court denied the request to give this instruction.  (*Id.* at 171-75.)

> FN1.   In that prior incident, [Todd] had appeared in a different family law matter pertaining to his daughter Eden, Zachery's half-sister.  Eden's mother is Sandra Hoffman, whose brother-in-law Davion Barlowe [sic] was present for the March 4, 2010 hearing as a potential witness.  In the Solano County courthouse family law clerk's office, [Todd] pushed Barlow with his elbow, punched Barlow in the face, and then challenged Barlow to a fight. Bojorquez, a legal document assistant, witnessed the incident, as to which [Todd] was charged with battery ([Cal. Penal Code] § 242).  A jury acquitted him of those charges on July 14, 2010.

On September 3, 2010, the jury found Todd not guilty of attempting to dissuade either witness or of battery, but found him guilty of simple assault (a lesser included offense to battery) and of resisting, obstructing, or delaying a peace officer.  On September 8, 2012, the court suspended imposition of sentence and granted Todd three years of summary probation with terms including thirty days in jail.

Through counsel, Todd appealed his conviction to the Appellate Division of the Solano County Superior Court, arguing that the trial court abused its discretion when it allowed the testimony of Barlow and Bojorquez and erred in refusing to instruct the jury regarding the use of excessive force.  The appellate court affirmed Todd's conviction on August 1, 2011.  After the

appellate court granted rehearing and heard additional argument, it issued a decision affirming the judgment.

Proceeding *pro se*, Todd filed in the Appellate Division of the Solano County Superior Court a motion to appeal in the California Court of Appeal. The Appellate Division denied the motion and, considering the motion in the alternative as an application to certify the case for transfer to the Court of Appeal, denied the application.

Todd then filed in the California Court of Appeal a motion to appeal to that court, to appoint an attorney, and to stay sentencing. On April 12, 2012, the Court of Appeal denied the motion because the underlying conviction did not include a felony and determined that any appeal would be untimely since judgment was entered on September 8, 2010. Considering the motion as a petition to transfer, the court determined that it was untimely and procedurally defective.

Again proceeding *pro se*, Todd filed in the California Supreme Court a petition for a writ of habeas corpus. In that petition, he argued that: 1) the jury was not properly instructed on his right to defend himself; 2) the jury was not properly instructed on his right to defend his child; 3) the public defender did not submit "all of the evidence"; 4) adverse witnesses from a previous offense of which he was acquitted were allowed to testify but his supportive witnesses were not; 5) the prosecutor committed misconduct that prejudiced the jury; 6) the evidence was legally insufficient to sustain his conviction; 7) because he was convicted of simple assault unjustly, his disobeying an officer conviction was unjust as well; 8) the court admitted that he suffered prejudice at trial; 9) Zachery's mother committed perjury which went uncorrected and affected the jury's verdict; 10) he should be allowed to appeal to the California Court of Appeal rather

than the Appellate Division of the Solano County Superiort Court; 11) his appellate attorney rendered ineffective assistance; and 12) new evidence surfaced which would have changed the outcome of the jury's verdict.  The state supreme court denied the petition without comment on November 28, 2012.  Todd timely filed a Petition for a Writ of Habeas Corpus to this Court on December 3, 2012.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Todd asserts the following grounds for relief which he previously raised in his petition for a writ of habeas corpus to the California Supreme Court: 1) failure to instruct on self-defense; 2) failure to instruct on protecting a child; 3) missing evidence; 4) inconsistent admission of witnesses from prior proceeding; 5) prosecutorial misconduct; 6) insufficiency of the evidence; 7) invalid conviction on disobeying an officer charge; 8) trial court remark demonstrates prejudice; 9) perjury; 10) error in post-conviction proceeding; 11) ineffective assistance of appellate counsel; and 12) actual innocence.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## IV. DISCUSSION

A.     Jurisdiction

"For a federal court to have jurisdiction over a habeas petition filed by a state prisoner, the petitioner must be 'in custody.'" *Zichko v. Idaho*, 247 F.3d 1015, 1019 (9th Cir. 2001). At the time Todd filed his Petition, he was serving a period of probation and was thus within the custody of the California Department of Corrections and Rehabilitation. Docket No. 15 at 2; *see United States v. Spawr Optical Research, Inc.*, 864 F.2d 1467, 1470 (9th Cir. 1988) (holding that a petitioner serving a probationary term is "in custody" for the purposes of habeas jurisdiction). Because the three-year term of probation was imposed in September 2010, it appears that the period of probation has now been completed. "Nonetheless, if a petitioner is in custody at the

time he files his federal habeas petition, his subsequent release from custody does not deprive the court of its jurisdiction." *Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005). Thus, because Todd was still serving his probation on the date he filed the instant Petition in federal court, this Court has jurisdiction over the habeas proceeding.

B.      Exhaustion

This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66.

In the Ninth Circuit, a petitioner must make the federal basis of the claim explicit either by referencing specific provisions of the federal Constitution or statutes or by citing to federal case law. *Robinson v. Schiro*, 595 F.3d 1086, 1101 (9th Cir. 2010). Mere similarity of claims between a state law claim and a federal law claim is insufficient for exhaustion purposes. *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). In order to present the substance of a claim to a state court, the petitioner must reference a specific federal constitutional provision as well as a statement of facts that entitle the petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

In his petition for a writ of habeas corpus filed in the California Supreme Court, Todd raised all the claims asserted in the instant Petition. As Respondent notes, however, he raised his

claim that all of the evidence was not submitted at trial (claim 3) without reference to any federal case law or specific federal constitutional guarantee; he merely asserted that his "right to a fair trial was violated when all of the evidence was not submitted in the trial."  Similarly, with respect to his claim that the trial court remarked that he suffered prejudice (claim 8), Todd only stated that his "right to a fair trial and right to due process were violated when the court continued with the trial even though the prejudice had been acknowledged."  Such vague references are insufficient to satisfy exhaustion requirements.  *See Gray*, 518 U.S. at 162-63 (holding that vague references to broad constitutional principles such as due process, equal protection, or a fair trial do not satisfy the exhaustion requirement).

Unexhausted claims must be dismissed.  *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).  However, this Court need not rely on this basis as it may deny the Petition on the merits notwithstanding the lack of exhaustion of state court remedies.  28 U.S.C. § 2254(b) (2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Accordingly, this Court declines to dismiss the unexhausted claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

C.    Merits

Failure to Instruct (Claims 1, 2)

Todd first argues that the trial court erred in refusing to instruct the jury on Todd's right to defend himself from an attack.  Todd contends that "he was initially pushed from behind and had to defend himself in the altercation."  Todd similarly contends that the trial court's failure to instruct the jury on his right to protect his child from danger constituted a mistrial.

9

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.* at 73 (citation omitted). Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). In those cases, the inquiry is

whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process."  *Id.* at 156-57; *Estelle*, 502 U.S. at 72.

As an initial matter, Todd raises his claims only in terms of state law, but federal habeas relief is not available for errors of state law only.  *See* 28 U.S.C. § 2254(a); *see also Estelle*, 502 U.S. at 67-68.  Claims of error in state jury instructions are generally a matter of state law that do not usually invoke a constitutional question.  *Gilmore v. Taylor*, 508 U.S. 333, 342-43 (1993).  "Claims that merely challenge the correctness of jury instructions under state law cannot reasonably be construed to allege a deprivation of federal rights."  *Van Pilon v. Reed*, 799 F.2d 1332, 1342 (9th Cir. 1986); *see also Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) ("Any error in the state court's determination of whether state law allowed for an instruction . . . cannot form the basis for federal habeas relief."); *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988) (an instructional error "does not alone raise a ground cognizable in a federal habeas corpus proceeding").  Thus, to the extent that Todd contends that the failure to give the various instructions violated state law, such claims are not cognizable on federal habeas review.

Moreover, the trial court refused to give either instruction because it determined that there was insufficient evidence to support giving the instructions on self-defense.  In support of the instruction request, defense counsel stated, "The only evidence that I want to point to—and I know it just takes a slight bit—was that Mr. Todd wanted to be standing in one location that Ms. Rapalyea also wanted to be standing in.  And I think that that leads to the inference that she could have pushed him instead of him pushing her."  The trial court responded, "No, I don't get there.  [¶]  I also don't hear any evidence of any fighting words by Ms. Rapalyea, other than she declined to respond to the questions.  And I don't think you can consider that to be a provocative

act.  [¶]  It certainly is not a self-defense theory . . . ."  This Court must be particularly deferential

to such findings of fact, and Todd has not provided a basis for the Court to do otherwise.

*Sumner v. Mata*, 455 U.S. 591, 597-98 (1982) (state courts' underlying factual findings are

subject to a presumption of correctness); *Ponce v. Cupp*, 735 F.2d 333, 336 (9th Cir. 1984).

An independent review of the record fully supports the trial court's finding that

insufficient evidence supported either a self-defense or defense of others instruction.  The

conduct at issue occurred at a courthouse during a family law mediation.  A mediation is "a

process in which a neutral person or persons facilitate communication between the disputants to

assist them in reaching a mutually acceptable agreement."  Cal. Civ. Proc. Code § 1775.1(a).

An essential component of mediation is the concept of self-determination in which the parties are

in control of resolving their own dispute.  *Travelers Cas. & Sur. Co. v. Superior Court*, 24 Cal.

Rptr. 3d 751, 757 (Cal. Ct. App. 2005).  To that end, the California Rules of Court provide:

> A mediator must conduct the mediation in a manner that supports the principles of
> voluntary participation and self-determination by the parties.  For this purpose a mediator
> must:
>> (1) Inform the parties, at or before the outset of the first mediation session, that
>> any resolution of the dispute in mediation requires a voluntary agreement of the
>> parties;
>> (2) Respect the right of each participant to decide the extent of his or her
>> participation in the mediation, including the right to withdraw from the mediation
>> at any time; and
>> (3) Refrain from coercing any party to make a decision or to continue to
>> participate in the mediation.

Cal. Rules of Court 3.853.

If Todd was unhappy with the mediation or Rapalyea's involvement in it, the only right

he had was to withdraw from it and pursue judicial action.  Likewise, his desire for Rapalyea to

stop associating with Zachery does not give rise to a right to use force.  Todd alleges that he

caught Rapalyea inappropriately massaging his son, but Rapalyea's precise role with regards to Zachery is not fully developed in the record and thus this Court is without sufficient information about their relationship to decide the extent to which Todd's concern was reasonable.  Even assuming, without deciding, that Todd's concern was reasonable, his use of force was not.  As the trial court stated to Todd, if he did not want Rapalyea to associate with Zachery, "[y]ou get a restraining order; but you don't get to push somebody."  The circumstances here simply do not support an inference that self-defense or defense of a child was in any way necessary.

Furthermore, even if the failure to give the instructions was error, it was harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  There was no evidence at trial that Todd felt any fear of Rapalyea, either for himself or for his son.  Zachery, Rapalyea, and Archer testified that Zachery and Archer were sitting and Rapalyea was standing with them when Todd approached the group.  Zachery and Rapalyea testified that Todd pushed Rapalyea.  Archer testified that, although she did not see a push, she saw Todd stand right in front of Rapalyea, heard Zachery say, "Oh, no.  That's not right," and saw Zachery jump up and get Deputy Miller. Given this evidence, it is not reasonably probable that Todd would have obtained a more favorable verdict had the jury been instructed with the self-defense instruction.  Accordingly, Todd is not entitled to relief on his jury instruction claims.

<u>Missing Evidence (Claim 3)</u>

Todd next claims that certain evidence was not submitted at trial and that its disclosure "would have changed the jury's verdict" because it showed that Todd "was protecting his son from a child predator."  Todd attaches to his Petition the evidence at issue—a letter that Todd sent Rapalyea stating that she did not have Todd's consent to have contact with his son and a

police department report on an incident described as a "neighbor dispute" in which the officer noted that, at Todd's request, he left a voicemail message for Rapalyea informing her that Todd did not want her to have contact with his son.

Construing Todd's *pro se* Petition liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), it appears that Todd claims that his trial counsel was ineffective for failing to submit at trial the letter and police report.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Todd must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

The question "is not whether a federal court believes the state court's
determination" under the *Strickland* standard "was incorrect but whether that
determination was unreasonable—a substantially higher threshold."  And,
because the *Strickland* standard is a general standard, a state court has even more
latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v.*

*Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Todd falls far short of satisfying the *Strickland* standard.  A criminal defendant does not

have an unfettered right to introduce evidence "that is incompetent, privileged, or otherwise

inadmissible under standard rules of evidence."  *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).

In this case, the letter and case report were not relevant to whether Todd attempted to dissuade

Zachery and Rapalyea from testifying, committed battery or assault on Rapalyea, or resisted

Deputy Miller.  As such, counsel cannot be faulted for not attempting to introduce inadmissible

evidence, and thus Todd cannot demonstrate that his counsel's performance was deficient.

Nor can Todd show that he was prejudiced by counsel's alleged error.  The record

indicates that Rapalyea was questioned at trial about the documents at issue:

| | |
|---|---|
| [Defense counsel]: | . . . .In June of this year, Mr. Todd told you he didn't want you interacting with his son anymore.  Is that right? |
| [Rapalyea]: | Correct. |
| [Defense counsel]: | In fact, he wrote a letter telling you that he didn't want you to contact his son anymore; is that right? |
| [Rapalyea]: | Correct. |
| [Defense counsel]: | And he tried to give you that letter, correct? |
| [Rapalyea]: | He tried to get me to sign the letter. |
| [Defense counsel]: | And you refused, right? |
| [Rapalyea]: | Correct. |
| [Defense counsel]: | And then he tried to send you the letter in certified mail, correct? |
| [Rapalyea]: | Correct. |
| [Defense counsel]: | And you chose to leave it at the post office, correct? |
| [Rapalyea]: | I ignored it. |
| . . . . | |

15

| [Defense counsel]: | And then, eventually, the police contacted you from the Dixon Police Department. Is that right? |
| [Rapalyea]: | Correct. |
| [Defense counsel]: | To tell you that Mr. Todd wanted you to no longer communicate with his son, correct? |
| [Rapalyea]: | Yes. |

Given that Rapalyea testified to the contents of the letter and police report, Todd cannot show that there is a reasonable probability that, had the documents themselves been admitted, the would have been different. *See Hill*, 474 U.S. at 57. Todd therefore cannot prevail on his evidentiary claim.

<u>Witnesses from Prior Proceeding (Claim 4)</u>

Todd next contends that the admission of testimony by two witnesses to a prior alleged battery for which he was acquitted violated the collateral estoppel component of the guarantee against double jeopardy and that the exclusion of his supportive witnesses from that prior proceeding denied his right to a fair trial.

1. Admission of Testimony of Two Adverse Witnesses

Barlow and Bojorquez testified at trial that, about five months prior to the assault at issue, Todd pushed Barlow with his elbow, punched him in the face, and challenged him to a fight after Barlow had testified in a child custody case relating to Todd's daughter. Todd introduced evidence at trial that the jury had acquitted him of battery and challenging another to fight in a public place with regards to the prior alleged altercation. The court instructed the jury that it could consider the evidence of the other offense only if the prosecution proved it by a preponderance of the evidence.

Collateral estoppel, or issue preclusion, "'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated

16

between the same parties in a future lawsuit.'" *United States v. Seley*, 957 F.2d 717, 720-21 (9th Cir. 1992) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).  In *Ashe*, on which Todd's argument relies, several bandits robbed six men playing poker, and Ashe was tried and acquitted for robbing one of the six men.  397 U.S. at 437-39.  The State then obtained a conviction against Ashe for the robbery of one of the other victims.  *Id*. at 439-40.  The United States Supreme Court reversed, holding that the collateral estoppel element of the Double Jeopardy Clause precluded relitigation of the issue of the robber's identity because the only contested issue in the first trial was identity.  *Id*. at 442-43, 445.  Therefore, collateral estoppel barred litigation for the robbery of any of the other poker players because identity would necessarily be an ultimate issue in each trial.  *Id.* at 445.

However, "[i]f an act that could have been proved to a lesser degree than that required for conviction is for some reason probative in a subsequent trial, it need not be excluded because of the prior acquittal."  *Seley*, 957 F.2d at 723; *see United States v. Watts*, 519 U.S. 148, 156 (1997) (per curiam) (holding that an acquittal in a criminal case does not preclude the government from relitigating an issue for purposes of sentencing because it is governed by a lower standard of proof); *Dowling v. United States*, 493 U.S. 342, 348 (1990) ("[T]he collateral estoppel component of the Double Jeopardy Clause [does not] exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted.").  In *Dowling*, the defendant was tried and acquitted of a burglary during which he allegedly wore a ski mask and carried a small pistol.  493 U.S. at 344-45.  At a subsequent trial for a bank robbery, during which the defendant was again accused of wearing a ski mask and carrying a small pistol, the

17

government introduced evidence of the prior burglary to demonstrate a pattern. *Id.* The United States Supreme Court held that the evidence was not barred by collateral estoppel in light of the differing burdens of proof involved; while the jury at the first trial had to find guilt beyond a reasonable doubt, the evidence at the second trial was admissible so long as the jury could reasonably conclude that the act occurred and defendant was the actor. *Id*. at 348-49. The Supreme Court also noted that, unlike in *Ashe*, the prior acquittal did not determine an ultimate issue in the second case. *Id.* at 348.

In this case, the court admitted evidence regarding the prior altercation not to again prosecute him for the same crime but as prior bad acts probative for other purposes. The court instructed the jury that, if it decided that Todd had committed the prior offense, it could only consider that evidence "for the limited purpose of deciding whether or not: One, [Todd] acted with the intent to dissuade a witness. Or two, [Todd] had a motive to commit the offenses alleged in this case. Or three, [Todd's] alleged actions were the result of mistake or accident." *Id.* The court additionally instructed the jury to "not consider this evidence for any other purpose. Do not conclude from this evidence that [Todd] has a bad character or is disposed to commit a crime." *Id.*

Collateral estoppel is concerned with successive prosecutions, not their outcomes. *Brown v. Ohio*, 432 U.S. 161, 166, n.6 (1977) (noting that the doctrine of collateral estoppel bars "successive prosecutions"); *Ohio v. Johnson*, 467 U.S. 493, 500 n.9 (1984). The double jeopardy clause protects against multiple prosecutions for the same offense; however, "the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *United States v. Felix*, 503 U.S. 378, 387 (1992) (footnote

18

omitted).  The lower standard of admissibility for evidence relating to prior bad acts makes the

doctrine of collateral estoppel under the double jeopardy clause of the Fifth Amendment

inapplicable.  As a result of the fact that the burden for the admission of evidence is less than

beyond a reasonable doubt, Todd's acquittal for the prior alleged battery is of no significance,

regardless of its source.  Todd therefore cannot demonstrate that the prosecution was collaterally

estopped from introducing Barlow and Bojorquez's testimony, and he is not entitled to relief on

this claim.

### 2. Exclusion of Prior Supportive Witnesses

In the same claim, Todd alleges that the trial court violated his right to a fair trial when it

excluded witnesses from the prior trial that he alleges were supportive of his defense in the

instant case.  The record reflects that defense counsel asked to call a single witness, Ms.

Carrington, Todd's attorney from the prior trial, to testify that witnesses other than Barlow and

Bojorquez had testified in the prior trial.  Barlow had already testified that other witnesses had

testified in the prior trial.  In addressing whether Ms. Carrington's testimony was admissible, the

trial judge, who had presided over the prior trial, described the testimony of the other witnesses

from the prior trial as follows:

> The three additional witnesses, as I recall from that trial, were Mr. Morrow, who
> was a clerk.  Nina Nesbit, who is also a clerk.  And Elizabeth Anderson, who was the
> attorney for Mr. Todd [in the underlying child custody case].
> Ms. Anderson didn't see anything.  She would agree that she rushed Mr. Todd out
> after all this went down, but she didn't see anything.  Ms. Nesbit didn't see anything.
> Mr. Mora's testimony is consistent with Mr. Bojorquez.  In fact, was probably more
> damaging than Mr. Bojorquez.
> I thought Mr. Bojorquez's testimony today was probably more helpful to, Mr.
> Todd, than in the first trial.  So I think you've already gotten the inference in there that
> there are additional witnesses.  I don't think Ms. Carrington can add anything more, and I
> don't think it's fair to allow her to testify as to those additional witnesses, because that's
> misleading.

Ms. Anderson didn't add anything.  It is misleading in terms of what occurred at that trial, so I'm going to exclude Ms. Carrington's testimony.  All she could do was tell us the identity of those witnesses.  She couldn't tell us the substance of what those witnesses testified about.

It is well settled that, under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his defense.  *See Washington v. Texas*, 388 U.S. 14, 19 (1967).  However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials.  *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006).  "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury.  The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate."  *Menendez*, 422 F.3d at 1033 (citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code section 352, permits the exclusion of evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."  *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd*, 576 F.3d at 948.  California

20

employs a similar rule.  *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

Exclusion of Ms. Carrington's testimony about the fact that other witnesses had testified did not violate Todd's right to due process because it was cumulative and irrelevant and thus could be properly excluded under evidentiary rules.  To the extent that Todd complains that the witnesses who testified at the prior trial were excluded, Todd cannot prevail on such claim because he did not attempt to introduce those witnesses at his subsequent trial.  *See Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) (holding that litigants who did not attempt to introduce testimony at trial cannot challenge exclusion of that evidence on appeal).  Todd is thus not entitled to relief on his claim that the trial court erred in excluding the testimony of these witnesses.

Prosecutorial Misconduct (Claim 5)

Todd additionally argues that the prosecutor made numerous remarks during her closing argument that constituted prejudicial misconduct.  Todd refers to the following comments: 1) her statement that Barlow was a "victim" of a previous incident involving Todd; 2) her statement that Todd was guilty of a prior crime for which he was tried and acquitted; and 3) her "numerous statements to the jury that instructed them to find [Todd] guilty of the alleged crimes."

To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Under this standard, only egregious prosecutorial misconduct can give rise to a

constitutional claim.  *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995).  A prosecutor's

comments in summation constitute grounds for reversal only when the remarks caused actual

prejudice.  *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (applying harmless error test to

claim of prosecutorial misconduct in summation).  Moreover, a prosecutor must have

"reasonable latitude" to fashion closing arguments.  *United States v. Molina*, 934 F.2d 1440,

1445 (9th Cir. 1991).

Todd fails to satisfy this standard.  Because two witnesses testified that Todd punched

Barlow, the prosecutor did not commit misconduct in describing him as a "victim" of the prior

offense based on the evidence at trial.  *See United States v. Blueford*, 312 F.3d 962, 968 (9th Cir.

2002) ("It is certainly within the bounds of fair advocacy for a prosecutor, like any lawyer, to ask

the jury to draw inferences from the evidence that the prosecutor believes in good faith might be

true.").  Likewise, the prosecutor acknowledged that Todd was acquitted of that charge but

argued that the evidence introduced at the present trial demonstrated by a preponderance of the

evidence that, despite the acquittal, Todd hit Barlow.  The prosecutor did not commit misconduct

by asking the jury to draw reasonable inferences based on the evidence presented at trial.  *Ceja v.

Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996).  Moreover, a prosecutor may argue that the

evidence demonstrates the defendant's guilt and ask the jury to so find.  *Menendez*, 422 F.3d at

1034.  Indeed, Todd fails to establish that the prosecutor's statements about the prior incident

were improper because they were simply argument, and the jury was instructed that "[n]othing

that the attorneys say is evidence."  *See Boyde v. California*, 494 U.S. 370, 384-85 (1990)

(arguments of counsel generally carry less weight with jury than instructions from the court; the

arguments are described in advance to jury as matters of argument, not evidence).  Todd

therefore cannot prevail on his prosecutorial misconduct claim.

Insufficiency of the Evidence (Claim 6)

Todd additionally contends that "[t]here was reasonable doubt that he committed the

crime of lesser assault (pushing) because of all the contradicting statements to the police and

contradicting testimony."

As articulated by the Supreme Court in *Jackson*, the constitutional standard for

sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to

the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the

original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This

Court must therefore determine whether the California court unreasonably applied *Jackson*.  In

making this determination, this Court may not usurp the role of the finder of fact by considering

how it would have resolved any conflicts in the evidence, made the inferences, or considered the

evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical

facts that supports conflicting inferences," this Court "must presume–even if it does not

affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the

prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority

for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

Consequently, although the sufficiency of the evidence review by this Court is grounded in the

Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).  It is through this lens that this Court must view an insufficiency of the evidence claim.

In this case, Todd's arguments with regard to his legally insufficiency of the evidence claim are nothing more than an attack on the testimony against him.  But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  *Schlup v. Delo*, 513 U.S 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004).  Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction.  *Schlup*, 513 U.S. at 330.  In this case, Zachery and Rapalyea testified that Todd pushed Rapalyea.  Archer testified that, although she did not see a push, she saw Todd stand right in front of Rapalyea, heard Zachery say, "Oh, no.  That's not right," and saw Zachery jump up and get Deputy Miller.

Although it might have been possible to draw a different inference from the evidence and any contradictions in testimony, this Court is required to resolve that conflict in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  Todd bears the burden of establishing by clear and

convincing evidence that the state court's upholding of the jury's factual findings against him

was erroneous.  28 U.S.C. § 2254(e)(1).  He has failed to carry such burden.  The record does not

compel the conclusion that no rational trier of fact could have found proof that Todd was guilty

of assault, especially considering the double deference owed under *Jackson* and AEDPA.  Todd

is therefore not entitled to relief on this claim.

Invalid Conviction (Claim 7)

Todd further claims that, because his assault conviction was invalid, he was not doing

anything that would subject him to a lawful arrest and thus he could not be convicted of

disobeying an officer either.  This argument fails because, as discussed above, the assault

conviction was not invalid.  Moreover, the elements of resisting, obstructing, or delaying an

officer are not dependant on the assault conviction.  That charge requires that an individual

resist, obstruct, or delay an officer in performing his duties; it does not require that the peace

officer be performing an arrest.  CALCRIM No. 2656.  Furthermore, as the Appellate Division

noted on direct appeal, the lawfulness of Deputy Miller's conduct in performing his duties at the

courthouse was "*conceded by the defense.*"  The court further noted that there was "a complete

absence of conflicting evidence" regarding Deputy Miller's authority to require Todd to move

away from the others in order to maintain peace in the courthouse even if Todd had not

committed assault.  This claim therefore also must fail.

Trial Court Remark (Claim 8)

Todd also asserts that "[t]he court admitted in testimony that there was prejudice towards

[him], but it did not declare a mistrial."  When the court was discussing the verdict form with

counsel outside of the jury's presence, the prosecutor noted that the first count was for

attempting to dissuade two different witnesses, Zachery and Rapalyea, and that she wanted to amend the complaint to add a count for each victim.  The court stated that it was inclined to permit the amendment because Todd had notice that the count involved two victims.  The court acknowledged that amendment would result in "some small amount of prejudice, in that there's two counts and two potential liabilities, when there was only ever plead one potential liability." It ultimately concluded, however, that it could "address any prejudice by addressing it at sentencing."  The verdict form given to the jury separated the dissuading a witness charge into two counts, one for Zachery and the other for Rapalyea.  Because the jury found Todd not guilty of either count, however, he suffered no prejudice from making the first count into two counts, and he therefore cannot prevail on this claim.  *Cf. Hardnett v. Marshall*, 25 F.3d 875, 880-81 (9th Cir. 1994) (finding no actual prejudice from admission of inadmissible testimony used to prove premeditation because petitioner was found not guilty of first degree murder and thus the error did not infect the entire trial).

    Perjury (Claim 9)

    Todd next argues that Zachery's mom committed perjury when she testified that she had sole legal custody of Zachery and consented to allow Zachery to testify against Todd at trial. Todd contends that he had joint legal custody and was unable to prevent Zachery from testifying due to the mother's perjury.

    "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted).  The essential elements of

prosecutorial misconduct are that (1) the testimony is false or perjured, (2) the prosecutor knew that the testimony was false or perjured, and (3) the false testimony was material. *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc); *see Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).

An independent review of the record establishes that Todd's claim for prosecutorial misconduct stemming from the presentation of the mother's testimony is without merit. Although the prosecutor has a duty to refrain from knowingly presenting perjured testimony, *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002), the record in this case does not establish that the prosecutor knew or should have known that her testimony was false or that her testimony was, in fact, false. Todd provides no factual basis that would lead this Court to conclude that the prosecutor knowingly presented false testimony. *See Morales v. Woodford*, 388 F.3d 1159, 1179 (9th Cir. 2004). Zachery's mother testified at trial on September 1, 2010, that she had full legal and physical custody of Zachery. Todd claims that she altered a child custody order, which he included as an attachment to his Petition, to falsely indicate that she was granted temporary legal and physical custody of Zachary on August 2, 2010. Todd offers nothing to counter the August 2, 2010, child custody order other than his unsupported assertions that the document was falsified and that he had joint custody of Zachery at the time of the trial. Such assertions provide no basis for habeas relief on the ground of prosecutorial misconduct.

Furthermore, even if the testimony was false, Todd fails to demonstrate that it was material. Todd asserts that he would have been able to prevent Zachery from testifying against him if Zachery's mother had not testified that she had full custody. But the Ninth Circuit has noted in dicta that "[t]here is no judicially or legislatively recognized general 'family' privilege"

that would allow a child to refuse to testify against a parent.  *United States v. Penn*, 647 F.2d 876, 885 (9th Cir. 1980).  Todd provides no legal support for his assertion that the trial court would have recognized such a privilege, particularly given that Zachery voluntarily chose to testify against his father, or at least did not refuse to do so.  Accordingly, Todd is not entitled to relief on this claim.

Error in Post-Conviction Proceeding (Claim 10)

Todd next claims that, because he was initially arrested for two felonies and housed in the felony block of the jail, he should have been allowed to appeal to the California Court of Appeal rather than the Appellate Division of the Solano County Superior Court.  However, this claim is not cognizable on federal habeas review because it pertains only to matters that occurred in the post-conviction review process.  *See Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir. 2011); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam) ("[A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings.").  Even if it were cognizable, it nevertheless would fail.  The record establishes that Todd was charged by misdemeanor complaint and that the case remained at all times a misdemeanor case.  As the Court of Appeal recognized, "Todd has failed to demonstrate he was charged with a felony, a prerequisite to an appeal to th[at] court."

Ineffective Assistance of Appellate Counsel (Claim 11)

Todd additionally contends that his appellate counsel was ineffective for failing to raise "crucial and obvious" issues in his appeal.

The Supreme Court has stressed that it is essential for appellate counsel to "examine the record with a view to selecting the most promising issues for review."  *Jones v. Barnes*, 463 U.S.

745, 752 (1983).  Counsel may "winnow[ ] out" weaker arguments on appeal and focus on key

issues which present the most promising for review.  *Id.* at 751.  "[A]ppellate counsel who files a

merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from

among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528

U.S. 259, 288 (2000).  "Generally, only when ignored issues are clearly stronger than those

presented, will the presumption of effective assistance of counsel be overcome."  *Gray v. Greer*,

800 F.2d 644, 646 (7th Cir. 1985).

The claims that Todd asserts are "crucial and obvious" are raised in the Petition before

this Court, namely, that: 1) the trial court erred in failing to instruct the jury on self-defense;

2) his trial counsel failed to submit "important evidence"; 3) the prosecutor committed

misconduct during summation; 4) the trial court admitted he had suffered prejudice as a result of

separating the dissuading a witness count into two separate counts; and 5) Zachery's mother

committed perjury.  As previously discussed, none of those claims have merit and thus his

counsel cannot be faulted for failing to raise them on appeal.  *See Lockhart v. Fretwell*, 506 U.S.

364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot

constitute prejudice under a *Strickland* ineffective assistance of counsel claim); *Jones*, 463 U.S.

at 751-52 (appellate counsel does not have an obligation to raise every nonfrivolous argument);

*Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th Cir. 1989) (appellate counsel's failure to raise a

weak issue did not constitute ineffective counsel).  Todd also complains that his counsel did not

file a supplemental brief after the Appellate Division granted rehearing, but he fails to allege

what claims counsel should have raised in the brief and thus does not show that the outcome

would have been different such that he was prejudiced by counsel's omission.  *See Hill*, 474 U.S.

at 57.  To the extent that Todd contends that counsel should have raised the claims he asserts

were "crucial and obvious," counsel was not ineffective for failing to raise these meritless

arguments in a supplemental brief on rehearing either.  *See Miller*, 882 F.2d at 1434-35.  Todd

therefore is not entitled to relief on his ineffective assistance of appellate counsel claim.

Actual Innocence (Claim 12)

Finally, Todd attempts to bring a claim of actual innocence.  As Respondent correctly

notes, while a federal habeas petitioner may assert a claim of actual innocence to overcome a

procedural bar to review, *Schlup*, 513 U.S. at 326, the Supreme Court has never held that a

freestanding claim of innocence is cognizable in a § 2254 petition filed by a non-capital

defendant, *see House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Atty's Office for Third Judicial

Dist. v. Osborne*, 557 U.S. 52, 71-72 (2009).  The Supreme Court has instead declined to answer

the question, noting that where "[p]etitioner has failed to make a persuasive showing of actual

innocence[,] . . . the Court has no reason to pass on, and appropriately reserves, the question

whether federal courts may entertain convincing claims of actual innocence."  *Herrera v.

Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring).  The Ninth Circuit, however, has

assumed as much without deciding the question and has held that "a habeas petitioner asserting a

freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must

affirmatively prove that he is probably innocent."  *Carringer v. Stewart*, 132 F.3d 463, 476 (9th

Cir. 1997) (en banc) (adopting the view of Justice Blackmun in his dissent in *Herrara*, 506 U.S.

at 442-44 (Blackmun, J., dissenting)).  Following the lead of the circuit, assuming, but not

deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, it is

necessary to apply the appropriate standard to the evidence.

In the context of the hypothetical freestanding actual innocence claim, the Supreme Court has described the threshold as "extraordinarily high." *Herrera*, 506 U.S. at 417. "The sequence of the Court's decisions in *Herrara* and *Schlup*–first leaving unresolved the status of freestanding claims and then establishing the gateway standard–implies at the least that *Herrara* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555. In fact, one Ninth Circuit judge has observed that prevailing on freestanding actual innocence claims "imposes a much more difficult–indeed possibly insurmountable–burden on the petitioner." *Smith v. Baldwin*, 510 F.3d 1127, 1155 n.8 (9th Cir. 2007) (en banc) (Reinhardt, J., dissenting).

Measured against this standard, Todd has fallen far short of establishing his actual innocence. Todd has not presented any "new" evidence of the type or quantity that would call his conviction into question. He points only to Zachery's report card, which indicates that his grade went down in the fall of 2010 while being tutored by Rapalyea, and Rapalyea's testimony that she tutored Zachery without Todd's knowledge and that her doctorate in human development was the equivalent of a developmental psychiatrist. Todd claims that "[t]he new evidence supported [his] claim that he was defending himself and his son from a child predator." But this evidence has no relevance as to whether Todd assaulted Rapalyea or resisted Deputy Miller, and to infer that this evidence suggests that Rapalyea preyed on Zachery is far too speculative and strained to support a self-defense justification. Absent any additional evidence of the nature or quality required by *Schlup*, Todd has failed to make a credible showing of actual innocence and cannot demonstrate that it is more likely than not that no reasonable juror would have convicted him. *Schlup*, 513 U.S. at 324. Consequently, Todd is not entitled to relief on this ground.

<u>Arguments Raised in the Traverse</u>

Todd raises for the first time in his Traverse a claim that the existence of cumulative error warrants the reversal of his conviction.  This Court does not need to address arguments raised for the first time in the Traverse.  *See Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008) (holding that reply is not the proper pleading to raise new arguments); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.").  In any event, as discussed above, Todd does not allege any claims that amount to errors of constitutional dimension.  Accordingly, he demonstrates no errors that can accumulate to a level of the constitutional violation and is not entitled to relief on this claim either.

## V. CONCLUSION AND ORDER

Todd is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 31, 2014.

      /s/James K. Singleton, Jr.
    JAMES K. SINGLETON, JR.
    Senior United States District Judge